UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE : CHARLES EDWARD WOOD, II AND JENNIFER LYNN HANNA<br>*DEBTORS* | CASE NO: 5:20-50037-MMP<br><br>CHAPTER 13 |
| CHARLES EDWARD WOOD, II<br>*PLAINTIFF*<br><br>V.<br><br>NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING<br>*DEFENDANT* | ADVERSARY PROCEEDING  NO: |

PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs, complaining of the Defendant, allege and say:

**PARTIES:**

1.   Plaintiff Charles Edward Wood, II is a resident of Bexar County, Texas.  He and his wife, Jennifer Lynn Hanna, received a discharge in their Chapter 13 bankruptcy Case No. 20-50037 on February 7, 2025.

2.  Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing is a limited liability company formed under the laws of Delaware with a principal place of business in Fort Washington, Pennsylvania.

**JURISDICTION AND VENUE**

3.  This Court has subject matter jurisdiction over this action pursuant to Bankruptcy cases and proceedings, because this is a civil proceeding arising under Title 11 of the United States Code and arising in and related to Plaintiff's Chapter 13 bankruptcy case.

4.  This Court has personal jurisdiction over NewRez LLC d/b/a Shellpoint Mortgage Servicing because it conducts business in Texas, services a mortgage loan secured by real property located in Texas, and has purposefully availed itself of the privileges of conducting activities in Texas.

5.  This Court is the proper venue for this case pursuant to Venue generally, as a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Texas, and the property that is the subject of the action is situated in the Western District of Texas.  Plaintiff's bankruptcy was filed in this Court and it was here he received his discharge of debts.

**FACTUAL AND PROCEDURAL HISTORY**

6.  On January 6, 2020, Plaintiff and his wife Jennifer Lynn Hanna filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code, Case No. 20-50037, in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

7.  Plaintiff's Chapter 13 plan was confirmed by order of the Court on April 7, 2020. The plan was later modified by order after confirmation on May 26, 2022, and June 27, 2023.

8.  At all times relevant hereto, Plaintiff and his wife were owners of record of certain real property located at 127 Bright Trail, San Antonio, Texas 78253 (the "Property"). The Property is theirprincipal residence.

9.  Plaintiff's mortgage loan on the Property was serviced by Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez").

10. Under the confirmed Chapter 13 plan, Plaintiff was required to make payments to the Chapter 13 Trustee, who would then make payments to NewRez for both ongoing mortgage payments and to cure the prepetition arrearage.

11. Plaintiff and his wife made all payments required under the confirmed plan.

12. The Chapter 13 Trustee's Final Report shows that $90,252.57 was paid to NewRez for ongoing mortgage payments and $17,281.91 was paid for mortgage arrearage.

13. On December 17, 2024, the Chapter 13 Trustee filed a Notice of Final Cure Payment, stating that the prepetition arrearage of $17,281.91 had been paid in full along with an additional $575 for postpetition fees, expenses and charges that were recoverable under Bankruptcy Rule 3002.1(c).

14. The Notice of Final Cure Payment was properly served on NewRez, as evidenced by the Certificate of Mailing filed with the Court.

15. On January 7, 2025, NewRez filed a Response to Notice of Final Cure Payment, which stated: "Creditor agrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim."

16. NewRez's Response to Notice of Final Cure Payment also stated: "Creditor states that the debtor(s) are current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs. The next postpetition payment from the debtor(s) is due on: 01/01/2025."

17. Plaintiff sent a full monthly payment to NewRez to be received at or around January 1, 2025.  However, NewRez did not apply the payment.  This payment was Plaintiff making the first post-petition payment which was due on 1/1/2025, but NewRez instead failed to apply it and in their accounting, they seem to mark that it was for the December 2024 payment.

18. On January 14, 2025, the Chapter 13 Trustee filed a Motion to Enter Discharge, which stated that "The Debtor(s) have made all payments called for under their Plan confirmed on April 7, 2020 unless otherwise ordered by the Court."

19. On February 7, 2025, the court signed the Order of Discharge for Charles Edward Wood II and Jennifer Lynn Hanna.

20. The Order of Discharge was served on NewRez.

21. On June 3, 2025, the Chapter 13 Standing Trustee filed her Final Report and Account, which confirmed that $17,281.91 was paid on the arrearage claim held by NewRez, and that $90,252.57 was paid on the ongoing mortgage serviced by NewRez.

22. NewRez did not object to the Trustee's Final Report.

23. Despite NewRez's acknowledgment in its Response to Notice of Final Cure Payment that Plaintiffs were current on all postpetition payments, and despite Plaintiffs making all required direct payments to NewRez after the completion of their bankruptcy plan, NewRez insisted that Mr. Wood was behind on his mortgage.

24. Charles Wood sent letters to NewRez LLC that were received May 1, 2025 and May 20, 2025. The letters explained that Mr. Wood and his wife had made all payments according to the schedule in the bankruptcy and since discharge, they had made their on-going mortgage payments in a timely manner. Mr. Wood included some of the bankruptcy documentation in the letters to show that they were current as all payments had been made during and after the bankruptcy.

25. However, despite Mr. Wood's repeated attempts to contact NewRez and get the mortgage straightened out, NewRez was still:
    a. Stating that money was owed above and beyond the monthly payments; and
    b. Reporting that Mr. Wood was behind on his mortgage to the credit reporting agencies.

26. In a letter dated July 21, 2025, NewRez attempted to distinguish between "bankruptcy-allowed amounts" and the "actual loan status," suggesting that even though all allowed amounts under the bankruptcy plan were accounted for, the loan itself was not current.

27. NewRez wrote "We would like to clarify that pre-petition and post-petition payments are allowed a certain amount by the bankruptcy court. Those documents are certifying that all of the allowed amounts have been accounted for. While the documentation certifies that all allowed amounts under the bankruptcy plan have been accounted for, this does not necessarily mean the loan itself is current. The reference to a due date of January 1, 025, indicates the next scheduled payment in the cycle, but it does not imply that only one payment is due at that time."

28. A review of NewRez's accounting of Mr. Wood's Loan History seems to show that pre-petition charges such as a property inspection from October 1, 2020, a title cost payment from March 1, 2020, recording cost payments from March 1, 2020 and January 1, 2020 were added back onto the loan after discharge.

29. Because of the extra charges, when Mr. Wood made his mortgage payments, the payments were being applied to previous months and their credit reports showed that they were late. Mr. Wood spent hours and hours over days and months trying to get Shellpoint to fix their reporting, but to no avail.

30. Until Mr. Wood hired a lawyer (Ciment Law Firm) and a Motion to Reopen the Bankruptcy was filed, Shellpoint made no effort to do anything but explain why they were correct in charging for pre-petition charges that had not been approved by the bankruptcy court.

31. Once the Motion to Reopen was granted, Shellpoint seems to have done some damage control – this was one year after the discharge in bankruptcy, and one year of having his credit show late mortgage payments. A review of the accounting provided after NewRez was claiming that it had fixed any problems showed that an entire fictional payment was applied to Plaintiff's loan in March 2026.

32. However, as of March 23, 2026, NewRez continued to report that Plaintiff was late 30 days as of March 2025. This is not accurate and this continues to

damage Plaintiff.  Bizarrely, NewRez reports most of the post-bankruptcy months as "no data" but reports that Plaintiff made a large payment of over $5000 in October 2025.  This is also not true.  Plaintiff paid normal monthly payments on time each month.

33. As of mid-2023, NewRez serviced a total portfolio of approximately 1.9 million loans, which includes a high volume of mortgages requiring "special servicing" done usually through its dba Shellpoint Mortgage Servicing.  These mortgages include many in bankruptcy or in default.

34. NewRez has the ability to know and follow the law; however, instead despite Mr. Woods repeatedly attempting to get their attention to the errors in his mortgage, NewRez did not begin to look at the problems in their accounting and reporting of his mortgage until he hired a law firm.  After the law firm was hired and a Motion to Reopen the bankruptcy was granted, NewRez stated they were fixing the issues.  Instead, they continued to report delinquencies that did not exist, causing further damage to Plaintiff.

35. NewRez's actions have caused Plaintiff to suffer damages, including damage to his credit, emotional distress, and now he owes for the attorney fees and court costs incurred in addressing these issues.  Plaintiff has lost hours of time as well.

36. Plaintiff's vehicle was old and he planned to get a newer vehicle after the bankruptcy.  Instead, he was denied a loan for this.

**COUNT I – VIOLATION OF 11 U.S.C. §524(I) – FAILURE TO CREDIT PAYMENTS RECEIVED UNDER CONFIRMED PLAN**
**(AGAINST DEFENDANT NEWREZ LLS D/B/A/ SHELLPOINT MORTGAGE SERVICING)**

37. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 36 as if fully set forth herein.

38. Defendant received payments under a confirmed plan.

39. The Chapter 13 Trustee's Final Report shows that $90,252.57 was paid to NewRez for ongoing mortgage payments and $17,281.91 was paid for mortgage arrearage.

40. Defendant willfully failed to credit the payments in the manner required by the plan.

41. Despite acknowledging in its Response to Notice of Final Cure Payment that Plaintiffs were current on all postpetition payments, NewRez later claimed that Plaintiffs' loan was still past due, indicating that NewRez failed to properly credit payments received under the confirmed plan.

42. NewRez's letter dated July 21, 2025, attempts to distinguish between "bankruptcy-allowed amounts" and the "actual loan status," suggesting that NewRez did not properly apply payments as required by the confirmed plan.

43. Defendant's failure to credit payments caused material injury to Plaintiffs. The failure to properly credit the portion of the payments meant for pre-petition arrearages to the arrearage payments confirmed in the plan and the failure to property credit the portion of the payment meant for post-petition monthly payments to the post-petition payments resulted in a higher payoff balance and thus a larger lien on Plaintiff's property. In addition, this failure to properly apply the payments created a false reporting to credit reporting agencies that Plaintiff was late on his mortgage post-discharge.

44. As a result of NewRez's failure to properly credit payments, Plaintiffs have suffered damages, including damage to their credit, emotional distress, and attorney's fees incurred in addressing these issues.

45. Defendant's actions constitute a willful violation of the Bankruptcy Plan. "Willful" does not require a showing of bad faith or specific intent to violate

the Code or plan, but instead only that the creditor intended to apply the payments received in the manner it applied them.

### COUNT II – VIOLATION OF 11 U.S.C. §524(A)(2) – VIOLATION OF DISCHARGE INJUNCTION (AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING)

46. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

47. A discharge was entered in Plaintiffs' bankruptcy case.

48. On June 1, 2020, the Court entered an Order of Discharge pursuant to.

49. The defendant had notice of the discharge.

50. The Order of Discharge was served on NewRez, as evidenced by the Certificate of Mailing filed with the Court.

51. The defendant intended the actions which violated the discharge.

52. NewRez sent correspondence to Plaintiff claiming he was still behind on his mortgage payments, despite having acknowledged in its Response to Notice of Final Cure Payment that Plaintiff was current on all post-petition payments.

53. In its letter dated July 21, 2025, NewRez claimed the loan was past due for the July 1, 2025 installment, despite acknowledging receipt of documentation showing that all post-petition payments were current.

54. The defendant's actions were to collect, recover, or offset a discharged debt as a personal liability of the debtor.

55. NewRez's actions in claiming that Plaintiff's loan was past due and attempting to collect amounts that should have been addressed during the bankruptcy constitute an attempt to collect a debt that was either discharged or should have been current according to the bankruptcy plan.

56. As a result of NewRez's attempt to collect pre-petition charges, Plaintiff has suffered damages, including damage to his credit, emotional distress, and attorneys fees incurred in addressing these issues.

57. Defendant's actions constitute a willful violation of Plaintiff's discharge.

### COUNT III – VIOLATION OF FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1 (AGAINST DEFENDANT NEWREZ LLC D/B/A/ SHELLPOINT MORTGAGE SERVICING)

58. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 58 as if fully set forth herein.

59. The claim is secured by a security interest in the debtor's principal residence.

60. NewRez held a mortgage secured by Plaintiffs' principal residence at 127 Bright Trail, San Antonio, Texas 78253.

61. The creditor failed to provide required notices of fees, expenses, or charges.

62. Based on NewRez's letter claiming amounts due beyond what was acknowledged in its Response to Notice of Final Cure Payment, it appears NewRez may have assessed fees, expenses, or charges without filing the required notices under Rule 3002.1(c) Chapter 13—Claim Secured by a Security Interest in the Debtor's Principal Residence [Effective December 1, 2025].

63. Additionally, NewRez's Response to Notice of Final Cure Payment appears to have been misleading or incomplete, as NewRez later claimed the loan was not current despite previously stating it was, suggesting a violation of Rule 3002.1(g).

64. The failure was not substantially justified.

65. There is no justification for NewRez's failure to provide the required notices or for providing misleading information in its Response to Notice of Final Cure Payment.

Adversary Proceeding Complaint –
Charles Wood Jr. vs. New Rez LLC dba Shellpoint Mortgage Servicing

66. The failure was not harmless.

67. NewRez's failure to provide the required notices and its provision of misleading information in its Response to Notice of Final Cure Payment caused harm to Plaintiffs, including damage to their credit, emotional distress, and attorney's fees incurred in addressing these issues.

68. This was a willing violation.

69. As of mid-2023, NewRez serviced a total portfolio of approximately 1.9 million loans, which includes a high volume of mortgages requiring "special servicing" done usually through its dba Shellpoint Mortgage Servicing. These mortgages include many in bankruptcy or in default.

70. NewRez has the ability to know and follow the law; however, instead despite Mr. Woods repeatedly attempting to get their attention to the errors in his mortgage, NewRez did not begin to look at the problems in their accounting and reporting of his mortgage until he hired a law firm. After the law firm was hired and a Motion to Reopen the bankruptcy was granted, NewRez stated they were fixing the issues. Instead, they continued to report delinquencies that did not exist, causing further damage to Plaintiff.

### COUNT IV – CONTEMPT FOR VIOLATION OF COURT ORDERS
### (AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING)

71. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

72. A valid court order existed.

73. The Bankruptcy Court issued a Confirmation Order approving Plaintiffs' Chapter 13 plan, which required proper application of payments to the mortgage.

74. The Court also issued a Discharge Order upon completion of the plan.

Adversary Proceeding Complaint –
Charles Wood Jr. vs. New Rez LLC dba Shellpoint Mortgage Servicing

75. The creditor had knowledge of the order.

76. NewRez had knowledge of these orders as evidenced by the Certificate of Mailing and its Response to Notice of Final Cure Payment.

77. The creditor violated the terms of the order.

78. Despite having knowledge of these orders, NewRez violated them by failing to properly credit payments and attempting to collect amounts that should have been addressed during the bankruptcy.

79. The debtor suffered harm as a result.

80. NewRez's violations caused harm to Plaintiffs, including damage to their credit, emotional distress, and attorney's fees incurred in addressing these issues.

81. As of mid-2023, NewRez serviced a total portfolio of approximately 1.9 million loans, which includes a high volume of mortgages requiring "special servicing" done usually through its dba Shellpoint Mortgage Servicing. These mortgages include many in bankruptcy or in default.

82. NewRez has the ability to know and follow the law; however, instead despite Mr. Woods repeatedly attempting to get their attention to the errors in his mortgage, NewRez did not begin to look at the problems in their accounting and reporting of his mortgage until he hired a law firm. After the law firm was hired and a Motion to Reopen the bankruptcy was granted, NewRez stated they were fixing the issues. Instead, they continued to report delinquencies that did not exist, causing further damage to Plaintiff.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against Defendant as follows:

    A. A declaration that NewRez violated 11 U.S.C. § 524(i), 11 U.S.C. § 524(a)(2), and

Federal Rule of Bankruptcy Procedure 3002.1;

B. A declaration that Plaintiffs' mortgage loan is current with no past due amounts, fees, or charges as of the date of discharge pursuant to Creation of remedy;

C. An order requiring NewRez to correct all credit reporting related to Plaintiffs' mortgage loan, to properly apply all payments received during the bankruptcy case as required by the confirmed plan, and to cease any collection activities related to amounts that should have been addressed during the bankruptcy;

D. Actual damages in an amount to be determined at trial, including damages for emotional distress, damage to credit score, and any financial losses resulting from NewRez's violations;

E. Punitive damages in an amount to be determined at trial, to deter NewRez and other mortgage servicers from engaging in similar conduct in the future;

F. Reasonable attorney's fees and costs incurred in bringing this action.

G. Such other relief as the Court deems just and proper.


JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

_____
Amy Clark
amy@cimentlawfirm.com
Ciment Law Firm, PLLC
221 Bella Katy Dr.
Katy, Texas 77494
Phone: (210)294-9273
Filing Email: cpfiling@cimentlawfirm.com